**In re OHFLA, INC., Debtor.**

**Bankruptcy No. 86–00189.**

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

April 22, 1988.

Betsy C. Cox, Jacksonville, Fla., for Deerwood Club.

Lisa Cohen, Keystone Heights, Fla., for debtor.

## MEMORANDUM OPINION AND ORDER

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS MATTER came on to be heard upon the objection of the creditor Deerwood Club, Incorporated, (Deerwood), to the debtor's application/notice pursuant to 11 U.S.C. § 363(b) of auction sale of real property of the estate. This application and objection have proceeded as a contested matter herein with discovery having been taken, and this Court does not find it necessary at this time to proceed in an adversarial context. The Court having considered the record, evidence, and argument of counsel herein, and otherwise being fully advised in the premises, makes the following findings of fact and conclusions of law:

Deerwood holds a first mortgage on the property which the debtor, OHFLA, Inc., proposes to sell, to wit: Tract XIX of the Estates of Deerwood, Phase Two. Deerwood is also the successor to Stockton, Whatley & Davin Company, the original developer of the Estates of Deerwood. The debtor proposes to sell the subject tract free and clear of the lien of Deerwood by subdividing the 16 acre tract into four

lots and then selling these lots at an auction sale. Deerwood objected to this application and notice of sale, contending that the debtor's proposed method of subdividing the land would violate the covenants and restrictions applicable to the subject Deerwood Estates tract. The covenant and restrictions applicable to this estate tract prohibit subdivision of the tracts unless the prior written approval of the developer Deerwood is obtained. The restrictions further provide that the subdivision must produce building plots which form an integral unit of land suitable for use as a single family residential building site.

An initial hearing was held on the debtor's application to sell on July 30, 1987, and was continued in order to allow the debtor time to submit to Deerwood a proposed site plan for Deerwood's review and hopeful written approval in accordance with the procedure mandated by the applicable covenants and restrictions. The debtor in accordance therewith submitted to Deerwood an initial site plan for its proposed subdivision. The plan was rejected by Deerwood by letter setting forth the specific problems and inviting an alternate plan from the debtor eliminating said problems. Deerwood objected in particular to the debtor's location of a residential building site in a wetlands portion of the property. The debtor submitted its revised plan to Deerwood correcting several of the related problems but failing to omit the wetlands residence from its proposal. This alternative site plan was thus likewise rejected by Deerwood. The second hearing in this matter then ensued.

The debtor seeks this Court's approval of its application to subdivide and sell the tract over the objection of Deerwood. Deerwood contends that the subject covenants and restrictions reserve absolute power in the developer to approve or disapprove proposed subdivisions. The parties agree, and Florida case law supports the conclusion that covenants and restrictions such as these are entirely valid so long as the exercise of the discretionary power by the developer is not arbitrary or unreasonable. *Engvalson v. Webster*, 74 So.2d 113 (Fla.1954); *Young v. Tortoise Island*

*Homeowner's Association, Inc.*, 511 So.2d 381 (Fla. 5th DCA 1987); *Voight v. Harbour Heights Improvement Association*, 218 So.2d 803 (Fla. 4th DCA 1969).

It is the debtor's contention that Deerwood is arbitrarily and unreasonably exercising its power in that the basis for its rejection of the site plan, to wit, that the debtor proposes a residential building site in the wetlands, is not specifically delineated in the covenants and restrictions as a proper basis for the developer's rejection of a site plan. The debtor cites the case of *Voight, supra,* in support of this proposition. In *Voight,* the subdivision improvement association which had sole and uncontrolled discretion to approve or disapprove proposed plans and specifications submitted to it for development, denied a specific request for allowance of two seven-story apartment buildings within the tract of land subject to the deed restrictions and building code requirements. The subject property was located in an area where multi-family residences including duplexes, apartments, and hotels, were permitted. The main reason that the association rejected the proposal was that the buildings differed greatly in height, mass, occupant density, and structural appearance from the other structures in the subdivision. The lower court upheld the right of the association to reject the proposal. However, on appeal, the Court noted that the deed restrictions placed no specific height limitation on the buildings. It found that the basis for the association's rejection of the proposal was that the structures were out of keeping with the general plan of construction and development followed in the subdivision. The Court then concluded that the discretionary clause in the deed restriction did not permit the association to arbitrarily establish height and size limitations more restrictive than those set forth in the deed, and then lawfully exercise its right of disapproval for the failure to meet the more restrictive requirements established by it. The debtor contends that this is precisely what the developer Deerwood is attempting to do in the instant case.

This Court, upon reviewing the *Voight* case, distinguishes it on the following grounds: in *Voight,* the particular type and use of structures was specifically contemplated and authorized by the deed restrictions. The structures in the plan submitted to the association were in keeping with this designated type and use restriction. The association objected to the size of the proposed structures, which was not addressed in the restrictions and thus an improper basis for the association's rejection of the plan. In the case *sub judice,* Deerwood did not contemplate a subdivision in Phase Two of its scheme, it just did not absolutely prohibit it. The developer was given broad discretion in any subdivision approval process. Specific standards were set forth in the covenants and restrictions regarding setbacks and minimum acreage. These, however, are not criteria against which to measure a proposed site plan, but rather absolute minimum standards which must be met in order to obtain the developer's approval. The covenants and restrictions provide for subdivision of tracts into lots which "will form an integral unit of land suitable for use as a single-family residential building site." Deerwood states that the debtor's proposed subdivision, in particular, Lot 4 thereof which lies in the wetlands, conflicts with the overall design and plan of development for all of the Estate lots; that construction in that wetlands area would destroy the existing nature preserve; that construction in that area would likewise adversely affect drainage; and that the configuration of the lots, backed against the power line easement, and stretching into "fingers" of land, was devised by the debtor merely to meet the three acre minimum requirement and not in keeping with the construction of an estate-type residence with a value comparable to the other Deerwood homes in that phase. Deerwood has in the past rejected a proposed site plan which it believed contained wetland lots upon which estate-type homes could not be built. The debtor's comparison of these tract XIX lots with others in phase three is unconvincing; the phase three lots which were back-filled were not located in the wetlands and were a higher elevation than the tract XIX lots. Likewise, the debtor's emphasis on other small acreage lots within the development is unpersuasive in that the land upon which those lots are located is dissimilar to tract XIX.

Based on the factors articulated by Deerwood for its rejection of the debtor's proposal this Court finds that its decision was not arbitrary or unreasonable. Deerwood has the discretion to prohibit erection of a residence which is not in harmony with the surrounding neighborhood and existing structures. (Estates of Deerwood Phase Two Covenants and Restrictions, paragraph 10). The testimony before this Court was that it would be "almost inconceivable that you could build an estate-type home" on Lot 4, configurated as it is and approximately one hundred (100) feet wide. (Testimony of Nicholas Cassala). The proposed subdivision thus does not produce areas of land "suitable for use as single-family residential building sites" in conformity with the Deerwood Estates concept.

Restrictive covenants serve a valid public purpose in enabling purchasers of property to control the development and use of property in the surrounding environment. *Wood v. Dozier,* 464 So.2d 1168, 1170 (Fla. 1985). All residents of Deerwood are represented by the association and are entitled to have these covenants enforced to preserve the character of the area in which they purchased their homesites. It is accordingly,

ORDERED AND ADJUDGED that the objection by Deerwood Club, Inc. to the debtor's application/notice to sell real property of the estate at public auction be, and it hereby is, sustained.